IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:04CV70

| | |
|---|---|
| **JERRY RAY ELLISON, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| **CIGNA HEALTHCARE OF** ) | |
| **NORTH CAROLINA, INC., and** ) | |
| **CONNECTICUT GENERAL** ) | |
| **LIFE INSURANCE COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the following motions and memoranda: (1) Defendant CIGNA Healthcare of North Carolina, Inc.'s Motion for Summary Judgment, Memorandum of Law in Support of Motion for Summary Judgment, and Affidavit of Sarah L. McPheron, all filed October 21, 2004 (Documents ## 11, 12, 13); (2) Plaintiff's Response to Defendant CIGNA's Motion for Summary Judgment, Memorandum of Law in Support of Plaintiff's Response, and Affidavit of Forrest A. Ferrell, all filed November 16, 2004 (Documents ## 16, 17, 18); (3) Defendant Connecticut General Life Insurance Company's Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment, both filed November 24, 2004 (Documents ## 20, 21); (4) Defendants' Reply in Support of Motion for Summary Judgment, filed November 24, 2004 (Document # 22); (5) Plaintiff's Response to Defendant Connecticut General Life Insurance Company's Motion for Summary Judgment and Memorandum of Law in Support of Plaintiff's Response, both filed December 14,

2004 (Documents ## 23, 24); (6) Defendant Connecticut General Life Insurance Company's "Objection to Plaintiff's Untimely Response," filed December 17, 2004 (Document # 25); (7) Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment and Memorandum of Law in Support of Motion for Extension of Time, both filed December 29, 2004 (Documents ## 26, 27); (8) Defendant Connecticut General Life Insurance Company's Response to Plaintiff's Motion for Extension of Time, filed January 12, 2005 (Document # 28); (9) Affidavit of Dr. Marion Herring, filed by Plaintiff on January 19, 2005 (Document #29); (10) Defendants' "Objection to and Motion to Strike Untimely Affidavit of Dr. Marion Herring" and "Defendants' Memorandum of Law in Support of Their Objection To and Motion to Strike Untimely Affidavit of Dr. Marion Herring," filed January 24, 2005 (Documents ## 30, 31); and (11) "Plaintiff's Response to Defendant's [sic] Objection to and Motion to Strike Affidavit of Dr. Marion Herring" and Memorandum of Law in Support of Plaintiff's Response, both filed January 28, 2005 (Documents ## 32, 33). These Motions are now ripe for disposition by the Court.

Having carefully considered the arguments, the record, and the applicable authority, for the below-stated reasons the Court will <u>grant</u> Defendant CIGNA HealthCare of North Carolina, Inc.'s Motion for Summary Judgment, <u>grant</u> Defendant Connecticut General Life Insurance Company's Motion for Summary Judgment, <u>grant</u> Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment, and <u>grant</u> Defendants' Motion to Strike Affidavit of Dr. Marion Herring.

## I. FACTUAL AND PROCEDURAL HISTORY

For purposes of the Motions for Summary Judgment, the Court accepts the following

facts taken in the light most favorable to Plaintiff as true. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

A.     **Plaintiff's Injuries and Surgeries**

In 1990, Plaintiff Jerry Ray Ellison, Jr. ("Plaintiff" or "Ellison") injured his left knee in a motorcycle accident. As a consequence of this injury, in 1998 and again on September 2, 1999, Plaintiff underwent anterior cruciate ligament ("ACL") reconstruction surgery to repair this damage.

In spring 2000, Plaintiff again injured his left knee in a car accident. On April 18, 2000, Plaintiff was examined by Marion Herring, M.D., at which time Plaintiff complained of swelling in his left knee resulting from the spring 2000 car accident. Dr. Herring noted that Plaintiff had a "mild amount of swelling over [the distal screws]" but "is otherwise neurovascularly intact." (McPheron Aff. Exh. B). During a May 22, 2000 examination, Dr. Herring noted:

> Patient is a 24 y.o. white male status post anterior cruciate ligament reconstruction on Sept. 2, 1999. He was not compliant with P.T. He was recently involved in a motor vehicle accident and the aching pain he was having in his knee is slowly resolving. He reports no feeling of instability in his knee. . . . **IMPRESSION**: STABLE KNEE, STATUS POST ANTERIOR CRUCIATE LIGAMENT RECONSTRUCTION.

( *Id.*). In subsequent examinations by Dr. Herring, however, Plaintiff complained of increasing pain in his left knee. Dr. Herring concluded in the September 28, 2001 examination report that Plaintiff was "status post anterior cruciate ligament reconstruction two years prior, still having some patellofemoral arthritis-type pain." ( *Id.*). During Plaintiff's examination on November 30, 2001, Dr. Herring noted:

> Patient is status post left knee anterior cruciate ligament reconstruction Sept. 2, 1999. <u>He was a very poor rehab candidate in the past</u>. <u>He has suffered a sequence</u>

3

>   of secondary injuries to his knee. He reports a motorcycle wreck with a hyperextension injury in the past. He reports fall off a wheel sled with an injury to his knee. He also reports being involved in a motor vehicle accident with significant impact over the anterior part of his knee to the dashboard. He has noticed over the last two years increasing pain mainly on the lateral aspect of his knee joint. He does have some buckling and giving-way. . . .

(*Id.*) (emphasis added). At the conclusion of this examination, Dr. Herring discussed various treatment options with Plaintiff, including conservative care, anterior cruciate ligament revision, and general knee arthroscopic debridemant. (*Id.*). Dr. Herring noted concern with Plaintiff's rehabilitation potential and warned Plaintiff that "if he undergoes an anterior cruciate ligament revision without adequate rehab, he will fail." (*Id.*). Plaintiff advised Dr. Herring that he wanted to proceed with the anterior cruciate ligament revision. (*Id.*). Consequently, On January 7, 2002, Plaintiff underwent left knee ACL revision. (*Id.*).

**B.  Plaintiff's Insurance Coverage**

Floyd S. Pike Electrical Contractor, Inc. ("Pike Electric"), located in Boone, North Carolina, hired Plaintiff as an electrician on August 29, 2001. On October 28, 2001, Plaintiff became a member of Pike Electric's Flexible Benefits Plan, which includes the Company's group health insurance plan (collectively "the Plan"). (*See* McPheron Aff. Exh. A). As alleged by Plaintiff, either Defendant CIGNA HealthCare of North Carolina, Inc. ("CIGNA") or Defendant Connecticut General Life Insurance Company ("CGLIC") is the administrator of the Plan. (Second Am. Compl. ¶¶ 5,6). With regard to medical benefits, the Plan provides, among other things, as follows:

>   **Pre-Existing Condition Exclusion**
>
>   No benefits will be paid for charges for an injury or illness which begins prior to the effective date of a person's coverage. . . .

This exclusion will not apply after the earlier of:

- the end of any 12 consecutive month period, beginning after the injury or illness occurs and ending after a person has been covered under the Plan during which:
    - no diagnosis is made or treatment is received; or
    - no Covered Expenses are incurred for care of the injury or illness; or
- the date the person has been covered under the Plan for 12 consecutive months.

(McPheron Aff. Exh. A, p. 44).

As a result of the January 7, 2002 knee surgery, Plaintiff incurred substantial medical expenses. Consequently, Plaintiff alleges that in August 2003, he mailed notice of his claim for benefits relating to his January 7, 2002 knee surgery to HealthSource Provident Administrators, Inc. ("HealthSource"), which was identified in the Policy as the Claims Fiduciary.[1] (Pl. Resp. to Defs. Mot. for Summ. Judgm. p. 2). Plaintiff received no response from HealthSource. Subsequently, on September 17, 2003, counsel for Plaintiff mailed the claim to HealthSource via certified mail. (Ferrell Aff. ¶ 4, Exh. B). In response to the September 17, 2003 letter, Wex Carter, CIGNA's Claims Service Manager, contacted Plaintiff's attorney and requested that Plaintiff submit another notice of his claim. (*Id.* ¶ 5, Exh. C.) Mr. Carter advised Plaintiff's attorney that the claim forms were available on CIGNA's website. (*Id.*). Plaintiff obtained the requisite forms and again submitted his claim. (*Id.* ¶ 6, Exh. D).

On March 9, 2004, Plaintiff's counsel engaged in a telephone conversation with Mr. Carter. (*Id.* ¶ 1, Exh. A). Subsequent to this conversation, Plaintiff again submitted his claim to

---

[1] Pursuant to the administrative record in this case, on June 7, 2002 and October 21, 2002, Dr. Herring sent letters to CIGNA Healthcare, advising the company that Plaintiff's had suffered a "secondary injury which lead to secondary instability" and required ACL revision on January 7, 2002. Dr. Herring stated that the ACL revision should fall within Plaintiff's insurance policy through his employment with Pike. (McPheron Aff. Exh. B).

5

CIGNA, to which he did not receive a response. (*Id.* ¶ 7, Exh. E).

Consequently, on April 30, 2004, Plaintiff filed his Complaint against CIGNA in the Watauga County Superior Court, seeking to recover the outstanding balance of medical expenses incurred due to the January 7, 2002 surgery. Defendant CIGNA removed Plaintiff's Complaint to this Court on June 1, 2004. On July 9, 2004, Plaintiff filed an Amended Complaint, in which he withdrew his state law claim and included a claim under the Employee Retirement Security Act of 1974, 29 U.S.C. §§1001 *et seq.*, as amended ("ERISA"). CIGNA filed an Answer to Plaintiff's Amended Complaint on July 23, 2004. On October 11, 2004, Plaintiff moved to add CGLIC as a Defendant, which this Court permitted on October 22, 2004. Thereafter, on November 4, 2004, Plaintiff filed his Second Amended Complaint, in which he added CGLIC as a Defendant.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. But the party opposing summary judgment may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249-50. Moreover, when the movant supports its motion for summary judgment by affidavits, the adverse party may not rest upon the mere allegations or

denials of their pleading, but the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e).

Courts, in considering motions for summary judgment, view the facts and inferences in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir. 1980). Summary judgment is thus proper where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted).

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment[2]

Defendants argue that they are entitled to summary judgment on Plaintiff's claims because: (1) Defendant CGLIC is the Plan Fiduciary, not Defendant CIGNA; and (2) due to Plaintiff's pre-existing condition, it was not an abuse of discretion for the Plan Fiduciary to deny Plaintiff's claim. (Defs. Mem. of Law in Supp. of Mot. for Summ. Judgm. pp. 4-6). In response, Plaintiff argues that genuine issues of material fact exist with respect to whether his claim for benefits was properly denied. Plaintiff alleges that either CIGNA or CGLIC is the Plan Fiduciary and states that the actions of CIGNA and CGLIC were riddled with procedural abuse. (Second Am. Compl. ¶¶ 5, 6; Pl. Resp. to Defs. Mot. for Summ. Judgm. pp. 5-6).

---

[2] Defendant CIGNA and Defendant CGLIC filed separate motions for summary judgment, but Defendant CGLIC adopted the arguments contained in CIGNA's Memorandum of Law in Support of Motion for Summary Judgment. Moreover, Defendants filed a joint Reply to Plaintiff's Response. For purposes of discussion here, the Court will treat CIGNA's Memorandum of Law in Support of Motion for Summary Judgment as applicable to both Defendant CIGNA and Defendant CGLIC.

7

1.  **Claims fiduciary**

Before the Court can determine the standard of review to apply to the instant case, the Court must first assess whether Plaintiff sued the correct entities. The proper defendant to a lawsuit for ERISA benefits is the plan itself and any fiduciary. *McRae v. Rogosin Converters*, 301 F. Supp. 2d 471, 475 (M.D.N.C. 2004) (citing *Gluth v. Wal-Mart Stores, Inc.*, No. 96-1307, 1997 WL 368625 at * 6 (4th Cir. July 3, 1997) (unpublished)). Under the requirements of ERISA, "[e]very employee benefit plan . . . shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." 29 U.S.C. § 1102(a)(1). Even if a plan does not explicitly designate a fiduciary, ERISA provides that a person is a fiduciary of a plan to the extent: (1) he exercises any discretionary authority or control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (2) he provides investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property or the plan, or has the authority or responsibility to do so; or (3) he has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A).

> '[T]o the extent' in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition. The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary <u>with respect to the particular activity at issue</u>.

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) (emphasis added) (citing 29 C.F.R. § 2509.75-8, FR-16(1001); *Licensed Div. Dist. No. 1 MEBA/NMU v. Defries*, 943 F.2d 474, 477-78 (4th Cir. 1991); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1158 (3rd Cir. 1990); *Local Union 2132, United Mine Workers of Am. v. Powhatan Fuel, Inc.*, 828 F.2d 710,

714 (11th Cir. 1987); *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1459-60 (5th Cir. 1986); *Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984)); *see also Canada Life Ins. Co. v. Lebowitz*, 185 F.3d 231, 236-37 (4th Cir. 1999) (stating "[u]nder ERISA, a fiduciary is 'anyone . . . who exercises discretionary control or authority over the policy's management, administration, or assets'") (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)).

In the instant case, despite the fact that the Plan documents state that "[a]ll benefits are administered by Healthsource Provident Administrators, Inc. . . .,"[3] Plaintiff contends that Defendant CIGNA is the clam fiduciary for Pike Electric. In support for this contention, Plaintiff summarily states, "Defendant [CIGNA], by and through its duly authorized agents and employees, have also represented to Plaintiff that his claim for benefits should be submitted to Defendant for consideration." (Pl. Resp. to Def. CIGNA's Mot. for Summ. Judg. p. 5). Notably, however, Plaintiff alleged in his Second Amended Complaint that either CIGNA or, in the alternative, Defendant CGLIC, is the administrator of the Plan. (Second Am. Compl. ¶¶ 5, 6). Therefore, although Plaintiff did not address in his Response how CGLIC is the Plan fiduciary, since he alternatively sued CIGNA and CGLIC, he evidently believes one of the Defendants is the fiduciary of the Plan.[4]

In response, Defendant CIGNA argues that it is not the Plan fiduciary, as evidenced by

---

[3]McPheron Aff. Exh. A p. 2.

[4]Plaintiff fails to address the relationship between CIGNA and CGLIC, as well as any relationship between CIGNA and HealthSource. Moreover, a review of Plaintiff's Second Amended Complaint and Response Briefs to Defendants' Motions for Summary Judgment leads the Court to conclude that Plaintiff is not attempting to argue that *both* Defendants were fiduciaries of the plan. (*See* Second Am. Compl. ¶¶ 5, 6, 12-17, prayer for relief ¶¶ 2-6).

9

the fact that it did not make the decision to deny Plaintiff's coverage for costs arising from the January 7, 2002 surgery. (Defs. Mem. in Supp. of Mot. for Summ. Judg. p. 5) (citing McPheron Aff. ¶¶ 2-3). Moreover, Defendant CGLIC admits that it is the Plan administrator for Pike Electric, Inc. and, thus, is the fiduciary responsible for denying Plaintiff's claim. (Defs.' Reply in Supp. of Mot. for Summ. Judg. pp. 2-4); *see also* McPheron Aff. ¶¶ 2-3 (stating "[t]he claims for benefits under the Plan are administered by CGLIC pursuant to an administrative services agreement between CGLIC and Pike Electric. CGLIC has been the claim fiduciary under the Plan since 1998. The above-named defendant, CIGNA Healthcare of North Carolina, is not the claim fiduciary named under the administrative services agreement"); *see also* Answer to Second Am. Compl. ¶¶ 6-7. Furthermore, the various "Provider Explanation of Medical Benefits" sent to Plaintiff clearly state at the top, "Connecticut General Life Insurance Company as <u>Administrator </u>for: Pike Electric." (McPheron Aff. Exh. C) (emphasis added).

In light of the fact that all evidence in the record points to the conclusion that CGLIC is the fiduciary for the Plan, the Court concludes that CIGNA is not a properly named Defendant and is accordingly entitled to summary judgment. However, since CGLIC admits it is the fiduciary of the Plan and was responsible for denying Plaintiff's claim, CGLIC is a properly named Defendant and is not entitled to summary judgment on that basis. [5]

### 2.     **Scope of judicial review**

Once the court has identified the fiduciary, the court must then determine the standard of judicial review applicable to decide whether the fiduciary erroneously denied the plaintiff's

---

[5]The Court notes that even if Defendant CIGNA were found to be a fiduciary, it would still be entitled to summary judgment for the reasons stated in Section A.3 infra.

claim.

"A federal court's ability to review a discretionary decision of the administrator of an employee benefits plan is significantly limited." *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 605 (4th Cir. 1999). If the benefit plan grants the fiduciary discretionary authority to determine a claimant's eligibility for benefits or to construe the terms of the plan, a reviewing court may only disturb the challenged denial of benefits upon a showing that the fiduciary abused its discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Elliott*, 190 F.3d at 605; *Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997); *Sheppard & Enoch Pratt Hospital, Inc. v. Travelers Ins. Co.*, 32 F.3d 120, 123-24 (4th Cir. 1994). "'[W]hat follows from the applicability of the abuse of discretion standard is that the trustee's interpretation of relevant provisions of the plan documents – hence the challenged denial of benefits – will not be disturbed if *reasonable.*'" *Sheppard*, 32 F.3d at 124 (quoting *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1187 (4th Cir. 1989)). Thus, if the fiduciary's interpretation is reasonable, a court must affirm the denial even if the court would have come to a different conclusion independently. *Ellis*, 126 F.3d at 232 (citations omitted). A "reasonable" interpretation is one that is "'the result of a deliberate, principled reasoning process and . . . is supported by substantial evidence.'" *Elliott*, 190 F.3d at 605 (quoting *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997)). Substantial evidence is "'evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

However, the deference owed to a plan fiduciary's decision is tempered when the

decision to deny benefits impacts the fiduciary's financial interests, which results in the fiduciary operating under a conflict of interest. *Bernstein v. Capitalcare, Inc.*, 70 F.3d 783, 787 (4th Cir. 1995). In sum, if a plan administrator acts as both the fiduciary making claim decisions and the insurer paying claims, an inherent conflict of interest exists. (*Id.*). Accordingly, deference to the plan administrator is lessened, but only "to the degree necessary to neutralize any untoward influence resulting from the conflict." *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 87 (4th Cir. 1993) (citations omitted). Therefore, where the plan fiduciary is operating under such conflict of interest, such conflict is to be weighed as a factor in determining whether there is an abuse of discretion. *Ellis*, 126 F.3d at 233 (citing *Firestone Tire*, 489 U.S. at 115). Under no circumstance may a court deviate entirely from the abuse of discretion standard. *Id.* Rather, "[t]he more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it." *Id.*

The conflict of interest, however, is just one factor to be considered in determining whether a fiduciary abused its discretion. *Id.* A court should also consider, to the extent relevant: (1) the scope of the discretion conferred; (2) the purpose of the plan provision in which the discretion is granted; (3) any external standard that is relevant to the fiduciary's exercise of that discretion; (4) the fiduciary's motives; and (5) any conflict of interest under which the fiduciary operates in making its decision. *Id.* (quoting *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 89 (4th Cir. 1996)).

In the present case, the Plan contains the following pertinent language:

> . . . It is the intent of the Plan Sponsor that the Claims Fiduciary shall have the <u>sole and exclusive discretion and authority</u> to carry out all actions involving claims procedures explained therein. The Claims Fiduciary shall have the <u>sole and exclusive discretion and power</u> to grant and/or deny any and all claims for benefits and construe any and all issues relating to eligibility for benefits. All findings, decisions, and/or determinations of any type made by the Claims Fiduciary shall not be disturbed unless the Claims Fiduciary has acted in an arbitrary and/or capricious manner.
>
> Subject to the requirements of law, the Claims Fiduciary shall be the sole judge of the standard of proof required in any claims for benefits and/or in any question of eligibility for benefits. . . .

(McPheron Aff. Exh. A, p. 82) (emphasis added). Both Plaintiff and Defendants agree that this language gives the Plan fiduciary discretionary authority to make eligibility determinations. Plaintiff argues, however, that because CIGNA acted in an arbitrary and capricious manner, the Court must review the denial of benefits under a more rigorous standard.

The above contractual language seems to be an attempt to force the Court into a judicial review based on the "arbitrary and capricious" standard. The Fourth Circuit has made clear, however, that "the abuse of discretion standard, not the arbitrary and capricious standard, is the appropriate one for judicial review of a fiduciary's discretionary decision under ERISA." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 344 (4th Cir. 2000). Moreover, while ERISA jurisprudence extends broad authority for parties to agree on the scope of benefits and the procedures to follow in applying for benefits, ERISA does not allow a plan to alter the established standard of judicial review of a fiduciary's discretionary decisions. *Id.*, 201 F.3d at 343.

Accordingly, this Court concludes that the Plan here provides CGLIC with discretion to

13

interpret the language of the Plan and to grant or deny benefits in accordance with such interpretation. Moreover, as explained above, the arbitrary and capricious standard of review provided for in the Plan is inapplicable to this Court's analysis.

With regard to a conflict of interest, Plaintiff does not argue that the fiduciary acts as both the insurer and the administrator, nor does he ask the Court to apply a modified abuse of discretion standard. Rather, as discussed above, Plaintiff contends that the arbitrary and capricious standard should be used in the Court's review of the fiduciary's decision. However, Defendant CGLIC admits that it is both the plan fiduciary *and* that it was responsible for denying Plaintiff's claim for payment of charges arising from his January 7, 2002 surgery. ( *See* McPheron Aff. ¶¶ 3, 7, Exh. C). Consequently, taken in the light most favorable to the Plaintiff, since CGLIC acted both as the fiduciary making claim decisions and the insurer, an inherent conflict of interest exists. Therefore, the Court will apply a modified abuse of discretion standard to this case and will weigh CGLIC's conflict of interest in determining whether CGLIC abused its discretion in denying Plaintiff's claim.

### 3. Evidence to be considered by the Court

Next, the Court must decide what evidence it may consider in determining whether Defendant CGLIC's decision to deny benefits was an abuse of discretion. In support of its Motion for Summary Judgment, Defendant filed an affidavit of Sarah L. McPheron, Legal Compliance Liaison for CGLIC, attaching a copy of the Plan, complete copies of medical records submitted by Plaintiff in connection with his claim for benefits arising from his January 7, 2002 knee surgery, and copies of CGLIC's denials of Plaintiff's claim for payment of charges arising

from the January 7, 2002 surgery. Although Plaintiff failed to attach any documentation to his Response, on January 19, 2005, Plaintiff filed an Affidavit of Dr. Marion Herring. The Court must now determine whether it can consider any evidence not before the Plan Administrator, including Dr. Herring's affidavit, in reviewing CGLIC's denial of benefits to Plaintiff.

The Fourth Circuit has made clear that an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time it made its benefits determination. *Sheppard*, 32 F.3d at 125. Although it may be appropriate for a court conducting a *de novo* review of an administrator's decision to consider evidence that was not taken into account by the administrator, under the abuse of discretion standard, a court must assess the reasonableness of the plan's administrator's decision according to the evidence available when the decision was made. *Webster v. Black & Decker (U.S.), Inc.*, 33 Fed. Appx. 69, 74 (4th Cir. 2002) (citing *Sheppard*, 32 F.3d at 125); *see also Abromitis v. Continental Casualty Co./CNA Ins. Cos.*, 261 F. Supp. 2d 388, 390 (4th Cir. 2003) (noting that when a court applies an abuse of discretion standard to an administrator's decision, the court may only consider those documents before the administrator at the time it made its decision) (citing *Sheppard*, 32 F.3d at 125, *Quesinberry v. Life Ins. Co. of North Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)). A court may not consider evidence that was unavailable to the plan administrator at the time it made its decision. *Sheppard*, 32 F.3d at 125.[6]

---

[6]When additional evidence is presented to the court, it may be appropriate in certain circumstances to remand the case to the administrator to consider the additional evidence. *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 (4th Cir. 1985). However, the decision to remand is discretionary and remand is not warranted if the administrator had before it reliable evidence upon which it could base its determination. *Berry*, 761 F.2d at 1008. Moreover, the Fourth Circuit has stated that the case for remand is strongest when the decision "involves records that were readily available and records that the trustees agreed that they would verify." *Id.* Here, the additional evidence submitted by Plaintiff in opposition to Defendants' Motion for Summary Judgment was an affidavit of Dr. Herring. This affidavit was created for purposes of this litigation and was not available at the time CGLIC made its

Consequently, this Court may only consider those documents that were considered by CGLIC in making its decision regarding Plaintiff's claim. As attested to by Ms. McPheron, the documents considered by CGLIC are those attached to her Affidavit. (McPheron Aff. ¶ 6). Therefore, this Court may not consider Dr. Herring's affidavit in reviewing CGLIC's denial of Plaintiff's claim.

### 4. Pre-existing condition exclusion to benefit recovery

CGLIC denied Plaintiff's claim pursuant to the Pre-Existing Condition Exclusion provision provided in the Plan. (McPheron Aff. ¶ 7, Exh. C). This provision provides as follows:

> **Pre-Existing Condition Exclusion**
>
> <u>No benefits will be paid for charges for an injury or illness which begins prior to the effective date of a person's coverage.</u> . . . This exclusion will not apply after the earlier of:
>
> • the end of any 12 month consecutive month period, beginning after the injury or illness occurs and ending after a person has been covered under the Plan during which:
>
>   • no diagnosis is made or treatment is received; or
>   • no Covered Expenses are incurred for care of the injury or illness: or
>
> • the date the person has been covered under the Plan for 12 consecutive months.

( *Id.* Exh. A, p. 44) (emphasis added).

In the instant case, Plaintiff had ACL surgery on his left knee on September 2, 1999. On April 18, 2000, Plaintiff complained to Dr. Herring that he had been involved in a car accident, after which Plaintiff had notable swelling in his left knee. ( *Id.* Exh. B). Plaintiff continued

---

determination regarding Plaintiff's claim. Moreover, CGLIC had copies of Dr. Herring's notes upon which it could rely in making its determination and Dr. Herring's affidavit is not additional evidence that warrants remand.

visits to Dr. Herring on May 22, 2000, September 1, 2000, and September 28, 2001. Plaintiff became a covered employee under the Plan on October 28, 2001. On November 30, 2001, due to the succession of secondary injuries that Plaintiff suffered *prior to October 28, 2001*, Dr. Herring discussed various treatment options with Plaintiff. [7] (*Id.*). At that time, Plaintiff chose to undergo ACL revision surgery, which Dr. Herring performed on January 7, 2000.

When Plaintiff submitted the costs of this surgery to his insurance, CGLIC denied coverage pursuant to the pre-existing condition provision of the Plan. (McPheron Aff. Exh. C). Plaintiff argues, however, that this denial was improper because Dr. Herring determined that Plaintiff should undergo surgery during the November 30, 2001 examination, which was a month after Plaintiff was covered by the Plan. Plaintiff maintains that his medical records show that his knee was functioning properly until November of 2001. (Pl. Resp. to Defs. Mot. for Summ. Judgm. p. 5).

CGLIC disagreed with Plaintiff's analysis of his medical records. There is no evidence, as Plaintiff contends, that his knee was functioning properly from his surgery in 1999 until November 2001. In fact, the opposite is true. Plaintiff's medical records establish that Plaintiff was suffering increasing pain and limited movement in his left knee beginning in April of 2000. The fact that the decision to undergo surgery did not occur until a month after Plaintiff was covered by the Plan is irrelevant. Neither the November 30, 2001 election of surgery nor the January 7, 2002 surgery are an "injury or illness" within the meaning of the Plan. Rather, the January 2002 surgery was a culmination of Plaintiff's medical difficulties, which began back in

---

[7]Notably, the 2000 car accident was not the only secondary injury that Plaintiff complained about to Dr. Herring. (*See* McPheron Aff. Exh. B, Dr. Herring's November 30, 2001 notes).

17

April 2000, prior to Plaintiff's coverage under the Plan.[8] Therefore, CGLIC did not abuse its discretion in denying coverage of Plaintiff's January 7, 2002 surgery pursuant to the pre-existing condition provision of the Plan.[9] Consequently, CGLIC is entitled to summary judgment.

5. **Improper denial of benefits**

Despite his failure to plead such allegations in his Second Amended Complaint, Plaintiff summarily argues in his Response to Defendants' Motion for Summary Judgment that CGLIC failed to follow the procedures required by the Plan in determining his eligibility for benefits. (Pl. Resp. to Defs. Mot. for Summ. Judgm. p. 5). Plaintiff maintains that due to CGLIC's failure to provide a basis on which it refused Plaintiff's claim, this Court should conduct a *de novo* review of CGLIC's denial of benefits.

For reasons stated in Section A.2 supra, a *de novo* review of CGLIC's denial of Plaintiff's claim is improper. Moreover, with regard to Plaintiff's claim that CGLIC failed to follow the Plan's procedures, Plaintiff does not dispute that he received "Provider Explanation of Medical Benefits" forms on March 21, 2002, April 5, 2001, and June 26, 2002, in which it was explained that Plaintiff's claim was denied based on the Plan's pre-existing condition provision. (McPheron Aff. Exh. C). No evidence has been presented that any procedural error on the part of CGLIC would defeat the application of the pre-existing condition exclusion to Plaintiff's claim.

---

[8] The Court agrees with CGLIC that if the Court found that the decision to undergo surgery or the surgery itself was an "injury or illness" under the Plan, then any employee could suffer from and receive care for an injury or illness but avoid the pre-existing condition provision of the Plan by waiting to undergo surgery until after the employee's participation in the Plan began.

[9] The Court notes that this conclusion does not change even if CGLIC's conflict of interest is weighed in deciding whether the fiduciary abused its discretion. The Plan language and Dr. Herring's medical records clearly establish that the January 7, 2002 surgery was a result of Plaintiff's medical difficulties that began at least in April 2000, if not earlier.

Therefore, Plaintiff's argument that CGLIC failed to follow the Plan's procedures for denying his claim is irrelevant to the Court's determination here.

B.  **Plaintiff's Motion for Extension of Time to File Response to Defendants' Motion for Summary Judgment**

Plaintiff filed his Motion for Extension of Time after filing his Response to Defendants' Motion for Summary Judgment. Plaintiff admits that due to his mistake in calculating the date upon which his Response was due, he filed his Response four (4) days late. Defendants contend that the Court should not consider this Response because Plaintiff did not ask for an extension prior to the deadline for filing such Response and Defendants did not consent to an extension.

After the time for filing a responsive document has passed, a court has discretion to order an extension upon a showing of good cause. FED. R. CIV. P. 6(b)(2). In light of the fact that there is a strong policy for courts to resolve issues on the merits, the lack of prejudice to Defendants resulting from Plaintiff's late filing of his Response, and for good cause shown, the Court will grant Plaintiff's Motion for Extension of Time.

C.  **Defendants' Objection and Motion to Strike Untimely Affidavit**

For the reasons stated in Section A.3 supra, Defendants' Motion to Strike Untimely Affidavit is hereby granted.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant CIGNA HealthCare of North Carolina, Inc.'s Motion for Summary Judgment is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Connecticut General Life Insurance

Company's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Extension of Time to Respond to Defendant's Motion for Summary Judgment is hereby **GRANTED**.

**IT IS FURTHER ORDERED THAT** Defendants' Motion to Strike Affidavit of Dr. Marion Herring is hereby **GRANTED**.

Signed: August 7, 2006

Richard L. Voorhees
United States District Judge